## Lusk *v.* Monongahela City Water Company (et al., Appellant).

Argued November 9, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*John M. Reed*, with him *Joseph C. Spriggs*, for appellants.

*G. I. Bloom*, with him *L. R. Oppenheim* and *Bloom, Bloom & Yard*, for appellee.

OPINION BY RHODES, P. J., March 21, 1949:

This is an appeal from a judgment in favor of claimant in a workmen's compensation case. The question presented is whether there is competent evidence in the record sufficient to justify the eleventh and twelfth findings of fact of the Workmen's Compensation Board. These are to the effect that deceased sustained an accidental injury on November 17, 1942, in the course of his employment when he slipped on some wet pipes in the water plant of defendant, and fell and bruised his right hip, as a result of which he died on December 25, 1942. If there is such evidence in the record the award must be sustained, as the medical testimony as to the

causal relation between the accidental injury and the death is admittedly sufficient.

Deceased had been employed by defendant for a period of 25 years prior to November 17, 1942, the date of the alleged accidental injury. Although he had the title of foreman, his duties were various and included work at different places in defendant's plant, as well as off the premises such as reading meters.

We are obliged to review claimant's evidence, including her own testimony, in a light most favorable to her, and to give her the benefit of all reasonable inferences. As a result, the following facts appear:

Claimant received two telephone calls from her husband on November 17, 1942, while he was at work. The first call was at 1:30 p.m., when he telephoned to ask what groceries he was to bring home that evening. He called again about 3:30 p.m. and told his wife that he fell in the upper tier of the pipe gallery at the pump station, about 3 p.m. or a half hour before he called, that he struck his leg, and that he would not be able to bring the groceries. He also told his wife in the course of the telephone conversation that he did not want to leave the plant until another employee, John Prodoresky, came to work, and that Prodoresky was due to arrive about 4 p.m.[1]

Deceased returned home about 5 o'clock on the evening of November 17, 1942. At that time his wife noticed a bruise on his right leg, between the knee and the thigh, which was the size of a goose egg. Deceased's daughter, a registered nurse, examined her father two days later, on November 19, 1942, and found a hard

---

[1] John Prodoresky testified that he arrived at the plant about 4 p.m.; that he noticed deceased walked with a slight limp; that upon inquiry deceased told Prodoresky that he fell and hurt his hip; that deceased was walking from the pipe gallery toward the lime room in the pump house. Prodoresky failed to identify the day of this occurrence.

raised lump with a bruise extending down the outer part of his thigh. Claimant reported the alleged accident to deceased's superior, the manager of defendant's plant, on November 23, 1942. Defendant's manager took deceased to a hospital for an X-ray examination. Previously, in November, 1941, deceased had been hospitalized in the Allegheny General Hospital as a result of a blood disease which was diagnosed as a leukopenia, or aplastic anemia. From November 17, 1942, the date of the alleged accident, to November 27, 1942, deceased was treated at home; he was then sent to the Cleveland Clinic by his attending physician, from which he returned December 2, 1942; he died December 25, 1942. The original death certificate which had been filled out by Dr. J. P. Hughes, deceased's physician and claimant's medical witness, gave aplastic anemia of one year duration as the cause of death. However, Dr. Hughes had amended the death certificate, and he testified that in his professional opinion the alleged injury (contusion) on November 17, 1942, so aggravated deceased's condition as to cause his death.

The referee and the board, in making a finding of an accidental injury in the course of deceased's employment, relied in part at least upon the declarations of deceased to his wife over the telephone. Were these declarations admissible as part of the res gestæ?

The general principles governing the admissibility of hearsay declarations as part of the res gestæ in workmen's compensation cases are well defined. In *Ceccato v. Union Collieries Co.*, 141 Pa. Superior Ct. 440, 444, 15 A. 2d 401, 403, we said: "No fixed time with relation to the main event may be set up as a standard for the admission of hearsay declarations as part of the res gestæ; each case must depend on its own facts and circumstances: Com. v. Gardner, 282 Pa. 458, 128 A. 87; Johnston v. Payne-Yost Construction Co., 292 Pa. 509, 141 A. 481; Smith v. Welsh Bros., 102 Pa.

Superior Ct. 54, 156 A. 598. As Judge KELLER (now President Judge) stated in Broad St. Trust Co. v. Heyl Bros., 128 Pa. Superior Ct. 65, 193 A. 397, at page 70: 'The test is whether they were made under such circumstances as would raise the reasonable presumption that they were spontaneous utterances of thoughts created by, or springing out of, the transaction itself, and so soon thereafter as to exclude the presumption that they were the result of premeditation and design: Riley v. Carnegie Steel Co., 276 Pa. 82, 84, 119 A. 832; McMahon v. E. G. Budd Mfg. Co., 108 Pa. Superior Ct. 235, 239, 164 A. 850.' " Again, in *Smith v. Welsh Bros.,* 102 Pa. Superior Ct. 54, 58, 59, 156 A. 598, 599, speaking through Judge DREW (now Mr. Justice DREW), we stated: "It has been repeatedly held that where the declarations of the injured person were made at or near the scene of the accident shortly after its happening, or where there are grounds for the belief that the utterances were called forth by the nervous excitement produced by the event in question, they are admissible as part of the res gestæ: Smith v. Stoner, 243 Pa. 57 [89 A. 795]; Tomczak v. Susquehanna Coal Co., 250 Pa. 325 [95 A. 465]; Eby v. Travelers Ins. Co., 258 Pa. 525 [102 A. 209]; Guyer v. Equitable Gas Co., supra [279 Pa. 5, 123 A. 590]. This is especially so where there is other evidence in the case pointing to an accidental injury: Johnston v. Payne-Yost Con. Co., 292 Pa. 509 [141 A. 481]. . . . In this class of cases the rules of evidence are not applied with the same rigor as in litigation before a jury. A strict technical application of these rules would often defeat the chief purpose of the Workmen's Compensation Act which is intended to give compensation to employes injured by accidents in the course of their employment: Johnston v. Payne-Yost Con. Co., supra."

We are of the opinion that the declarations were admissible, and that they were properly considered by

the compensation authorities as a basis for their finding of an accidental injury in the course of deceased's employment. We so conclude for at least two reasons:

In the first place, the statements allegedly made met to a fair degree the standard of definiteness necessary in such cases. The declarations show that claimant's husband fell in the pipe gallery of defendant's plant at approximately 3 p.m., a half hour before the declaration, and that he struck his leg on the pipes. The pipe gallery contained six to ten inch pipes in tiers which were naturally damp, but sometimes the pipes were wet due to atmospheric changes, and if a person fell he would fall among the pipes. The questions when, where, and how are answered with reasonable particularity. In this respect, the present case is distinguishable from *Schuch v. Harbison's Dairies, Inc.*, 150 Pa. Superior Ct. 582, 29 A. 2d 216, where the declarations were vague and indefinite.

Secondly, the declarations of deceased were apparently spontaneous, and made under circumstances which negatived the idea of premeditation or design. The telephone call at 3:30 p.m. to claimant was made within deceased's usual working hours. Moreover, the declarations showed that deceased had a definite reason for making the call at that time, that is, to tell his wife why he would be unable to bring home the groceries about which he had inquired in a prior call at 1:30 p.m. It was only natural, having called previously, that he called again and explained why he would not be able to do what he had arranged on the first call. In this sense the declarations of deceased as to the occurrence of the accident were spontaneous. Deceased's compelling reason for making the second call negatives premeditation or design, and shows that this call and the declarations therein were not made as a self-serving declaration in order to establish an accidental injury in the course of his employment. Spontaneity of utterance rather

than coincidence in point of time is the test in determining admissibility. *Smith v. State Workmen's Ins. Fund,* 140 Pa. Superior Ct. 602, 606, 14 A. 2d 554.

It is true that claimant's testimony as to the declarations of her husband was in part contradictory. But, under later explanation, any apparent contradictions were reconciled. She first testified that he told her in the telephone call at 3:30 p.m. that he had fallen in the pipe gallery at 1:30 p.m., but later in her testimony claimant placed the time of the fall under her husband's declaration as three o'clock and still later she explained about the two distinct telephone calls from her husband, the one at 1:30 p.m., the other at 3:30 p.m. Even if viewed as contradictory, the board could, under well-settled principles, accept part of her testimony and reject part. *Icenhour v. Freedom Oil Works Co.,* 145 Pa. Superior Ct. 168, 172, 20 A. 2d 817; *Luckenbach S. S. Co., Inc., v. Norton,* 41 F. Supp. 105, 107, 108. Our appellate courts have made it clear that it is the province of the jury or fact-finding body to reconcile conflicting statements or apparent contradictions in the testimony of a witness or of a party. *Johnson v. Staples,* 135 Pa. Superior Ct. 274, 280, 281, 5 A. 2d 433; *Ingram v. Pittsburgh,* 350 Pa. 344, 349, 39 A. 2d 49.

Furthermore, there was circumstantial evidence tending to establish an accidental injury in the course of deceased's employment. This has some bearing on the admissibility of the declarations in this class of cases, and lends weight to them as to the happening of the accident. *Johnston v. Payne-Yost Construction Co.,* 292 Pa. 509, 514, 141 A. 481. There was no evidence of traumatic injury when deceased left for his work on the morning of November 17, 1942. His employment on and off the employer's premises covered a wide area, and included work at different locations within the plant. The record shows that deceased's work seldom brought him in contact with other employes; and it does

not appear that he came in contact with any other employe on the day in question until some time after he made the telephone call to his wife at 3:30 p.m. A fall in the pipe gallery would be likely to result in the type of injury allegedly received. As previously stated, the injury was observed by his wife that evening and by his daughter, a nurse, two days later.

We may assume that the circumstantial evidence in this case is not sufficient standing alone to support the finding of an accidental injury in the course of employment (Cf. *Nesbit v. Vandervort & Curry,* 128 Pa. Superior Ct. 58, 62, 193 A. 393; *Baker v. Freed,* 138 Pa. Superior Ct. 315, 319, 10 A. 2d 913; *Lambing v. Consolidation Coal Co.,* 161 Pa. Superior Ct. 346, 353, 54 A. 2d 291), but the totality of the evidence, including the admissible declarations, fully supports the findings of fact and the award of the board (*Smith v. Welsh Bros.,* supra, 102 Pa. Superior Ct. 54, 156 A. 598).

The judgment of the court below is affirmed.