Emile F. duPONT and Margaret D. duPont, Appellants,

v.

UNITED STATES of America, Appellee.

No. 16537.

United States Court of Appeals Third Circuit.

Argued Oct. 20, 1967.

Decided Nov. 16, 1967.

Henry T. Reath, Duane, Morris & Heckscher, Philadelphia, Pa. (David C. Toomey, Philadelphia, Pa., John Biggs, III, Wilmington, Del., on the brief), for appellants.

Louis M. Kauder, Dept. of Justice, Tax Division, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Gilbert E. Andrews, Donald W. Williamson, Jr., Attys., Dept. of Justice, Washington, D. C., on the brief), Alexander Greenfeld, U. S. Atty., of counsel, for appellee.

Before HASTIE, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

We are here concerned with the effect on plaintiff's ocean front property in Ocean City, Maryland, of a storm during March 6–8, 1962 which the United States Corps of Engineers described as the most severe ever known in the area.

Section 165 of the Internal Revenue Code of 1954 authorizes a deduction from income of casualty loss to non-business property caused by storm which is not compensated by insurance.[1] Plaintiffs

---

1. Section 165 of the Internal Revenue Code of 1954 (26 U.S.C. § 165) provides:

"(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

   *     *     *     *     *

"(c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

   *     *     *     *     *

"(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual aris-

took the deduction in their 1961 income tax return under authority of § 165(h) of the Code (26 U.S.C. § 165(h)) which authorizes deduction in the taxable year immediately preceding the loss if it occurs in the period between the close of the taxable year and the time prescribed for filing the return. They calculated their loss at $95,000, which they claimed was the difference in the market value of the property before and after the storm. The Internal Revenue Service allowed only a deduction of $23,067.96 which represented the cost of repairing the house, cleaning up the debris and erecting a 150 foot bulkhead along the former dune line to protect the house. It disallowed the remaining $71,932.04 of the $95,000 deduction and determined a deficiency of $48,489.99 which plaintiffs paid with interest of $7,392.79 or a total of $55,-882.78. They brought the present action in the district court for refund.

The district judge after a trial without a jury dismissed the complaint and plaintiffs' subsequent motion to open the judgment and amend the findings of fact under Rule 52(b) and in the alternative to open the judgment and grant a partial new trial under Rule 59(a). This appeal followed.

■ It is well settled under the authorities [2] as well as the Regulations [3] under the Code [4] that the difference in market value before and after the casualty is the measure of the loss, which may not however exceed the taxpayer's adjusted basis.[5] The incidental effect of this provision in some cases is that a taxpayer may obtain a deduction for a loss based on a pre-casualty market value which is in excess of his cost without having paid any tax on the amount of the appreciation.[6]

The district court found that there was no dispute regarding the market value of the property prior to the storm. As to the market value of the property after the storm, Patterson, the expert called by plaintiffs, testified that it was $210,000. This formed the basis for the plaintiffs' claim of a loss of $95,000. The government's expert gave his opinion that there was no depreciation in the market value of the property as a result of the storm.

The district court rejected the government's appraisal testimony on the ground that it was based solely on an assumption that the property could be used for an apartment house development, which was not a permissible use under

---

ing from each casualty, or from each theft, exceeds $100. For purposes of the $100 limitation of the preceding sentence, a husband and wife making a joint return under section 6013 for the taxable year in which the loss is allowed as a deduction shall be treated as one individual. No loss described in this paragraph shall be allowed if, at the time of filing the return, such loss has been claimed for estate tax purposes in the estate tax return."

2. Helvering v. Owens, 305 U.S. 468, 59 S. Ct. 260, 83 L.Ed. 292 (1939); Alcoma Association, Inc. v. United States, 239 F. 2d 365 (5 Cir. 1956).

3. Section 1.165–7(b) of the Regulation provides:
   "(b) *Amount deductible*—(1) *General rule.* In the case of any casualty loss whether or not incurred in a trade or business or in any transaction entered into for profit, the amount of loss to be taken into account for purposes of section 165(a) shall be the lesser of either—

   "(i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or
   "(ii) The amount of the adjusted basis prescribed in § 1.1011–1 for determining the loss from the sale or other disposition of the property involved. However, if the property used in a trade or business or held for the production of income is totally destroyed by casualty, and if the fair market value of such property immediately before the casualty is less than the adjusted basis of such property, the amount of the adjusted basis of such property shall be treated as the amount of the loss for purposes of section 165(a)."

4. Internal Revenue Code of 1954, §§ 165 (h), 1011, 26 U.S.C. §§ 165(h), 1011.

5. Internal Revenue Code of 1954, § 1011, 26 U.S.C. § 1011.

6. See Alcoma Association, Inc. v. United States, 239 F.2d 365, 370 (5 Cir. 1956).

the deed restrictions and zoning regulations. The court held, however, that plaintiffs had sustained a loss in excess of their expenditure of $23,067.96 to restore the property, but that there was no satisfactory evidence upon which the court could rest a finding of fair market value after the storm, and since the burden of establishing the amount of the loss was on the plaintiffs, the court dismissed the complaint.

If the decision of the district court had been based upon a rejection of Patterson's credibility, the dismissal of the complaint would have been unassailable, for plaintiffs' case rested on his testimony. The court, however, made clear that this was not the basis of its action. After characterizing Patterson's testimony as "not acceptable", it declared that it did "not intend, even by inference, to impugn his veracity or integrity". It might, of course, have found Patterson's testimony not credible, even though it believed him to be a man of veracity and integrity.[7] But the court specified why it found Patterson's testimony unacceptable even though there was no doubt of his veracity or integrity: "The unacceptability of the testimony rests solely upon the fact that it was based upon an erroneous legal premise, i. e., that circumstances bearing upon the future condition and use of plaintiffs' property were irrelevant in determining its fair market value as of March 12, 1966 [the date, a week after the storm, when Patterson valued the property]." From this it clearly appears that although Patterson's evidence had been received as competent and no motion had been made to strike it,

nevertheless, the court dismissed plaintiffs' complaint not because it rejected Patterson's testimony on grounds of credibility, but rather because of a post-trial determination that his valuation was legally defective. If the testimony was insufficient as a matter of law in proof of market value because it was based on an erroneous premise, it was legally incompetent and should have been excluded, or having been received should have been stricken.[8]

It is not necessary, however, to determine whether the evidence was in fact incompetent. For in the circumstances of this case the district court should have granted plaintiffs' post-trial motion for relief by opening the judgment and granting a partial new trial.

An application to open judgment and permit the taking of additional testimony with consequent amendment of findings of fact or the making of new findings of fact, necessarily invokes judicial discretion. The denial of relief therefore must be upheld on appeal unless there is a clear showing that there was no reasonable basis within the range of discretion for the action taken.[9] Here plaintiffs admittedly suffered loss in excess of what was allowed them by the government. When the record was closed their expert's testimony that they had suffered a total loss of $95,000 was in evidence. Presumably the only question before the court was the determination of its credibility, especially in comparison with the opposing testimony of the government's expert. Plaintiffs were entitled to rely on the record as it was closed,[10] and they could not have antici-

7. Kline v. Commissioner of Internal Revenue, 130 F.2d 742 (3 Cir.), cert. denied, 317 U.S. 697, 63 S.Ct. 440, 87 L.Ed. 558 (1942).

8. Montana Railway Co. v. Warren, 137 U.S. 348, 352–354, 11 S.Ct. 96, 34 L.Ed. 681 (1890); United States v. Alker, 260 F.2d 135, 155–156 (3 Cir.), cert. denied, 359 U.S. 906, 79 S.Ct. 579, 3 L.Ed.2d 571 (1958); Wilson v. United States, 149 F.2d 780, 783 (6 Cir.), cert. denied, 326 U.S. 753, 66 S.Ct. 92, 90 L.Ed. 451 (1945). Cf. United States v. Lutz, 142 F.2d 985, 988–989 (3 Cir. 1944).

9. Patterson v. National Life & Accident Ins. Co., 183 F.2d 745, 747 (6 Cir. 1950); Halper v. Browning, King & Co., Inc., 117 U.S.App.D.C. 71, 325 F.2d 644 (1963).

10. See, e. g., Hornin v. Montgomery Ward & Co., Inc., 120 F.2d 500 (3 Cir. 1941); Broad Street Trust Co. v. Heyl Bros., 128 Pa.Super. 65, 193 A. 397 (1937), Keller, P. J.; Annots. 93 A.L.R. 788 (1934); 120 A.L.R. 205 (1939); 79 A.L.R.2d 890 (1961).

pated the subsequent rejection of the evidence on grounds of incompetency. They were thus deprived of the opportunity to supply the deficiency which they would have had if the evidence had been stricken during the course of the trial.[11] In these circumstances, therefore, after the court rejected Patterson's testimony, plaintiffs were entitled to an opportunity to offer additional evidence either by further explanation by Patterson or by other witnesses to supply the want of evidence which the court had declared existed. It is always desirable that a litigant's claim should be determined after the presentation of all the relevant evidence. This principle underlies Rule 41(a) (2) which has been construed to justify a voluntary dismissal without prejudice by a plaintiff even after trial, where the court believes a meritorious claim exists but there has been a technical failure of proof.[12] When the equitable considerations applicable to the respective parties are weighed the strong merits of the plaintiffs' application are met by no countervailing prejudice to the government. The cause of justice will be advanced with no prejudice to the government by affording plaintiffs an opportunity to supply the vacuum created by the post-trial determination of the legal insufficiency in their evidence.

We hold, therefore, that plaintiffs' application for post-trial relief should have been granted.

In these circumstances it is unnecessary to decide whether the court might properly have reduced Patterson's opinion of fair market value by making its own estimate of the amounts to be allowed for the elements it believed he had erroneously refused to consider, under the doctrine of Cohan v. Commissioner of Internal Revenue, 39 F.2d 540 (2 Cir. 1930).

The judgment of the district court will be reversed and the cause remanded with direction to grant plaintiffs' motion to open the judgment and as on a partial new trial to take additional testimony, amend or make new findings of fact and direct the entry of a new judgment under Rule 59(a).

---

11. Derrick v. Harwood Electric Company, 268 Pa. 136, 142, 111 A. 48 (1920).

12. Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 217, n. 5, 67 S.Ct. 752, 91 L.Ed. 849 (1947).